UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TIMOTHY JERRALD LAWHORN | ) | Chapter 7 |
| | ) | |
| Debtor | ) | Case No. 16-50146-acs |
| | ) | |

**MOTION TO DISGORGE FEES AND
IMPOSE CIVIL PENALTIES AND SANCTIONS
FOR ATTORNEY MISCONDUCT**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Samuel K. Crocker, the United States Trustee for Region 8 (the "UST"), through undersigned counsel, hereby moves the Court to order disgorgement of fees from Jason Allen Law LLC and Rick A. Johnson, Esq., and impose civil penalties and sanctions for attorney misconduct.

**Jurisdiction and Venue**

1. This Motion is based on 11 U.S.C. §§ 105, 307, 329, and 526; Fed. R. Bankr. P. 2016; and the Court's inherent power.

2. Venue is this Court is proper pursuant to 28 U.S.C. § 1409(a).

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**Background**

*A. The Parties*

4. The UST monitors and supervises the administration of cases commenced under chapters 7, 11, 12, 13, or 15 of the Bankruptcy Code pursuant to 28 U.S.C. § 586(a)(3).

5. Jason Allen Law LLC ("Upright") is an Illinois company authorized to conduct business in the Commonwealth of Kentucky under the assumed name of Allen Chern Law LLC,

and solicits clients over the internet, including individuals residing in Kentucky, under the name "UpRight Law."

6. Mr. Johnson is a member of the bar of the United States Bankruptcy Court for the Western District of Kentucky. Mr. Johnson operates his law office in Paducah, Kentucky, as a sole practitioner, but also files bankruptcy cases in this Court as a purported partner of "Allen Chern Law LLC."

7. Timothy Jerrald Lawhorn ("Mr. Lawhorn") is an assisted person as defined by 11 U.S.C. § 101(3). Mr. Lawhorn's debts consist of primarily consumer debts and the scheduled value of his nonexempt property is less than $192,450.

8. Upright and Mr. Johnson are debt relief agencies, as defined in 11 U.S.C. § 101(12A), and provided bankruptcy assistance, as defined by 11 U.S.C. § 101(4A), to Mr. Lawhorn, as described herein.

B. *Attorneys' Business Model*

9. Upright solicits prospective debtor clients over the internet. Excerpts of relevant webpages from https://www.uprightlaw.com as of April 20, 2017, are attached as **Exhibit A**. Upright's website states: "UpRight Law is a law firm. This website is an advertisement."

10. Upright's website lists Mr. Johnson as a local "partner" in Kentucky.

11. Upon information and belief, Mr. Johnson affiliated himself with Upright via a limited partnership agreement executed in or around March 2016.

12. Through their affiliation, Upright refers individuals seeking bankruptcy assistance within the Paducah Division of this Court to Mr. Johnson.

13. Upright has arranged for non-debtor third parties to pay attorney's fees for legal services and debtors' bankruptcy case filing fees on behalf of Upright's individual clients in numerous cases throughout the nation, including this case.

14. Under the so-called "New Car Custody Program," Upright offered no-cost legal representation to clients or prospective clients, such as Mr. Lawhorn, who owned vehicles with no equity. In lieu of paying for attorney fees and court filing fees out-of-pocket, prospective debtors were presented the option of surrendering possession of their vehicle to a third party who would remit the attorney fees and court filing fees to Upright upon taking possession of the vehicle.

15. Pursuant to the New Car Custody Program, and upon Upright's advice, Mr. Lawhorn surrendered possession of his Hyundai Elantra (the "Vehicle") to Sperro LLC ("Sperro") near his residence in Murray, Kentucky, on or before November 17, 2015.

16. Upon information and belief, at the time Sperro took possession, American Hyundai Finance had a valid lien on the Vehicle to secure repayment of Mr. Lawhorn's obligations.

17. Upon, or prior to, delivery of possession of the Vehicle to Sperro, Mr. Lawhorn executed a Transporting and Storage Authorization Agreement (the "Sperro Agreement") in favor of Sperro. An exemplary copy of a form substantially similar to the Sperro Agreement is attached hereto as **Exhibit B**.

18. On or around November 19, 2015, Fenner & Associates LLC, an affiliate of Sperro, paid $1,985.00 to Upright on Mr. Lawhorn's behalf.

19. Upon information and belief, Sperro transported the Vehicle to its storage facility located at 2534 Bluff Road, Indianapolis, Indiana, in accordance with the Sperro Agreement.

20. Pursuant to the terms of the Sperro Agreement, Mr. Lawhorn agreed to incur liability for Sperro's services provided under the Sperro Agreement. Among the fees incurred were $75.00 load and unload fees; towing charges at the rate of $1.85 per mile; a $175.00 "administrative fee;" storage fees of $45.00 per day, and subject to a 10% late charge penalty and additional fees upon default; and a $250.00 preventative maintenance fee. Further, the Sperro Agreement purported to grant Sperro a security interest in the Vehicle and provided for "lien sale processing charges" between $35.00 to $800.00 upon default for non-payment of storage fees.

21. Mr. Lawhorn has not paid any money to Sperro since entering into the Sperro Agreement.

*C. Lawhorn's Bankruptcy Filing*

22. At the relevant time herein, Mr. Lawhorn was an individual residing within this Court's jurisdiction.

23. In or around October 2015, Mr. Lawhorn communicated directly with one or more representatives of Upright regarding services related to seeking relief under the Bankruptcy Code.

24. On or around October 28, 2015, Mr. Lawhorn and Upright entered into an "Attorney Client Base Retainer Agreement for Chapter 7 Bankruptcy Related Services" (the "Upright Agreement"). A true and accurate copy of the Upright Agreement is attached hereto as **Exhibit C**.

25. Mr. Johnson filed Mr. Lawhorn's voluntary petition under chapter 7 of the Bankruptcy Code on March 17, 2016 (the "Petition Date").

26. In addition to his petition, Mr. Lawhorn signed his Statement of Financial Affairs and Declaration About an Individual Debtor's Schedules [DN 1, at 18 and 48].

27. Mr. Johnson, independently and as an agent of Upright, signed Mr. Lawhorn's petition as attorney for the debtor, and caused the relevant documents to be filed electronically via the Court's CM/ECF system.

28. The Statement of Financial Affairs, item 18, prompted Mr. Lawhorn to disclose any transfer of any property he made during the two years preceding the Petition Date, other than in the ordinary course of his financial affairs, including transfers made as security.

29. The Statement of Financial Affairs filed with Mr. Lawhorn's bankruptcy petition failed to disclose Mr. Lawhorn's transfer of the Vehicle to Sperro.

30. Upright facilitated, and therefore had knowledge of, Mr. Lawhorn's transfer of possession of the Vehicle to Sperro.

31. Upright facilitated, and therefore had knowledge of, Mr. Lawhorn's granting of a security interest in the Vehicle in favor of Sperro.

32. As a purported partner of Upright and as an agent of Upright, Mr. Johnson knew, or should have known upon the exercise of reasonable care, that Mr. Lawhorn had transferred an interest in the Vehicle to Sperro.

33. The Statement of Financial Affairs, item 22, prompted Mr. Lawhorn to identify any property stored at a place other than his home during the year prior to the Petition Date.

34. The Statement of Financial Affairs filed with Mr. Lawhorn's bankruptcy petition failed to disclose Mr. Lawhorn's storage of the Vehicle at Sperro's facility in Indianapolis, Indiana.

35. Upright facilitated, and therefore had knowledge of, Mr. Lawhorn's execution of the Sperro Agreement, wherein Mr. Lawhorn surrendered possession of the Vehicle to Sperro, and authorized Sperro to store the Vehicle at its facility in Indianapolis, Indiana.

36. As a purported partner of Upright and as an agent of Upright, Mr. Johnson knew, or should have known upon the exercise of reasonable care, that Mr. Lawhorn had authorized Sperro to store the Vehicle at its facility.

37. Official Forms 106D "Schedule D: Creditors Who Have Claims Secured by Property" and 106E/F "Schedule E/F: Creditors Who Have Unsecured Claims" (collectively, the "Schedules"), prompted Mr. Lawhorn to provide information about all claims against him.

38. The Schedules filed with Mr. Lawhorn's bankruptcy petition omitted his liability to American Hyundai Finance related to his purchase of the Vehicle.

39. The Schedules filed with Mr. Lawhorn's bankruptcy petition omitted his liability to Sperro arising under the Sperro Agreement.

40. Upright had knowledge of Mr. Lawhorn's outstanding liabilities to American Hyundai Finance and Sperro.

41. As a purported partner of Upright and as an agent of Upright, Mr. Johnson knew, or should have known upon the exercise of reasonable care, that Mr. Lawhorn had outstanding liabilities to American Hyundai Finance and Sperro.

42. The Disclosure of Compensation of Attorney for Debtor signed by Mr. Johnson and filed with Mr. Lawhorn's bankruptcy petition (the "2016(b) Statement") indicated that Sperro paid Upright $1,650.00 for legal services and the $335.00 case filing fee on Mr. Lawhorn's behalf. [DN 1, at 51].

**Violation of 11 U.S.C. § 329(a)**

43. The Upright Agreement was an agreement for services to be rendered in contemplation of or in connection with Mr. Lawhorn's chapter 7 bankruptcy case.

6

44. Upon information and belief, under the New Car Custody Program, an undisclosed agreement between or among Sperro and Upright, and/or Johnson existed pursuant to which Sperro paid Upright the compensation Mr. Lawhorn had agreed to pay under the Upright Agreement.

45. Upright and Mr. Johnson each had an obligation to file an accurate statement of the compensation paid or agreed to be paid in this case, and the source of such compensation.

46. Upright and Mr. Johnson each had an affirmative duty to disclose fully and completely all fee arrangements and payments for services rendered or to be rendered in contemplation of or in connection with Mr. Lawhorn's case including details of the precise nature of the agreements described herein.

47. By his signature, Mr. Johnson certified that the 2016(b) Statement was "a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding."

48. The 2016(b) Statement failed to provide complete and accurate information regarding the transactions underlying the payment of Mr. Lawhorn's fees and costs in the bankruptcy case.

49. The 2016(b) Statement did not disclose that payment for the bankruptcy representation derived from the transfer of the Vehicle to Sperro.

50. The 2016(b) Statement did not disclose the sharing of compensation between Upright and Mr. Johnson.

51. The omission of details concerning agreements between or among Sperro and Upright and/or Mr. Johnson was an attempt to mislead or inhibit the UST's oversight of the administration of this bankruptcy case.

52. The omission of details concerning agreements between or among Sperro and Upright and/or Mr. Johnson was an attempt to mislead or inhibit the Court's ability to regulate the conduct of attorneys practicing before it.

53. The Court has discretion pursuant to 11 U.S.C. § 105(a) to deny any and all compensation paid to attorneys who fail to satisfy the disclosure requirements of 11 U.S.C. § 329(a) and Fed. R. Bankr. P. 2016.

54. The incomplete and inaccurate disclosures in the 2016(b) Statement merit disallowance and disgorgement of all fees charged or received by Upright and Mr. Johnson in or in connection with this case.

**Violations of 11 U.S.C. § 526(a)(2)**

55. Both Upright and Mr. Johnson are a "debt relief agency" as that term is defined in 11 U.S.C. § 101(12A).

56. Upright and Mr. Johnson prepared or facilitated the preparation of verified papers that were inaccurate and incomplete for filing in Mr. Lawhorn's case.

57. Omission of details concerning Mr. Lawhorn's transfer of an interest in the Vehicle from the Statement of Financial Affairs was misleading to the Court, the chapter 7 trustee, and the UST.

58. Omission of details concerning Mr. Lawhorn's storage of the Vehicle with Sperro from the Statement of Financial Affairs was misleading to the Court, the chapter 7 trustee, and the UST.

59. Omission of details concerning Mr. Lawhorn's liabilities to American Hyundai Finance and/or Sperro from the Schedules was misleading to the Court, the chapter 7 trustee, and the UST.

60. Mr. Lawhorn acted with advice of Upright and/or Mr. Johnson when he executed the disclosures and declarations required to be filed with his bankruptcy petition.

61. Upright intentionally caused Mr. Lawhorn to omit details concerning the transfer of his interest in the Vehicle to Sperro and storage of the Vehicle with Sperro from required statements filed in the bankruptcy case.

62. Upright intentionally failed to advise Mr. Lawhorn that information about the transfer of his interest in the Vehicle to Sperro and storage of the Vehicle with Sperro was required to be included in the statement of financial affairs filed in the bankruptcy case.

63. Mr. Johnson intentionally failed to advise Mr. Lawhorn that information about the transfer of his interest in the Vehicle to Sperro and storage of the Vehicle with Sperro was required to be included in the statement of financial affairs filed in the bankruptcy case.

64. Mr. Johnson intentionally caused Mr. Lawhorn to omit details concerning liabilities to Sperro and American Hyundai Finance from required schedules filed in bankruptcy cases.

65. Mr. Johnson intentionally failed to advise Mr. Lawhorn that details concerning liabilities to Sperro and American Hyundai Finance were required to be included in the schedules filed in bankruptcy cases.

66. Cause exists to impose appropriate civil penalties against Upright and Mr. Johnson because they intentionally caused Mr. Lawhorn to make statements in a document filed in a bankruptcy case that were untrue or misleading in order to conceal the nature of Mr. Lawhorn's transactions with Upright and Sperro.

67. Cause exists to impose appropriate civil penalties against Mr. Johnson because he knowingly and recklessly failed to exercise reasonable care in counseling and preparing

documents for Mr. Lawhorn to ensure all statements made in documents filed in the bankruptcy case were true and not misleading.

**11 U.S.C. § 105(a) and Inherent Power**

68. Prior to Mr. Johnson's affiliation with Upright, Upright provided bankruptcy assistance to Mr. Lawhorn through communications from one or more of its officers, employees, or agents.

69. Upon information and belief, none of the individual officers, employees, or agents of Upright with whom Mr. Lawhorn communicated, excluding Mr. Johnson, was licensed to practice law by the Kentucky Supreme Court at the time bankruptcy assistance was rendered to Mr. Lawhorn.

70. Upon information and belief, none of the individual officers, employees, or agents of Upright with whom Mr. Lawhorn communicated, excluding Mr. Johnson, was directly supervised by an individual licensed to practice law by the Kentucky Supreme Court at the time bankruptcy assistance was rendered to Mr. Lawhorn.

71. Prior to Mr. Johnson's affiliation with Upright, one or more individual officers, employees, or agents of Upright discussed with Mr. Lawhorn the legal processes and ramifications of seeking relief under chapters 7 and 13 of the Bankruptcy Code.

72. Prior to Mr. Johnson's affiliation with Upright, one or more individual officers, employees, or agents of Upright advised Mr. Lawhorn that his current monthly income rendered him eligible for chapter 7 relief.

73. Upright's conduct described herein, through its officers, employees, or agents, excluding Johnson, constitutes the practice of law as defined by Kentucky SCR 3.020.

74. Cause exists for the Court to use its inherent power and the authority granted pursuant to 11 U.S.C. § 105(a) to prohibit Upright, and its owners and affiliates, from providing bankruptcy assistance or otherwise engaging in the unauthorized practice of law in or in connection with bankruptcy cases filed in this district whether directly or indirectly through any entities in which they have any ownership interests or management authority.

75. Cause exists for the Court to use its inherent power and the authority granted pursuant to 11 U.S.C. § 105(a) to sanction Upright, and its owners and affiliates, monetarily or through other means.

WHEREFORE, the United States Trustee respectfully requests that the Court:

a. Order Upright and Mr. Johnson to disgorge all funds received;

b. Impose civil penalties against Upright and Mr. Johnson in an amount determined by the Court to be just and appropriate for their intentional or clear and consistent pattern or practice of violating 11 U.S.C. § 526(a)(2);

c. Impose appropriate monetary and non-monetary sanctions against Upright, including without limitation, indefinitely prohibiting Upright and its owners and affiliates from providing bankruptcy assistance before this Court whether directly or indirectly through any entities in which they have ownership interests or management authority; and

d. Take such other action as the Court deems necessary to deter such misconduct and similar schemes in the future.

Respectfully submitted,

SAMUEL K. CROCKER
UNITED STATES TRUSTEE, REGION 8

/s/ Tyler R. Yeager
TYLER R. YEAGER
U.S. DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
601 W. Broadway, Suite 512
Louisville, Kentucky 40202
(502) 582-6000
tyler.yeager@usdoj.gov
*Trial Attorney*

## CERTIFICATE OF SERVICE

In accordance with Local Rule 9036-1, I certify that on April 20, 2017, I sent a copy of the foregoing *Motion to Disgorge Fees and Impose Civil Penalties and Sanctions for Attorney Misconduct* to all parties who requested notice in the above-captioned case by either: (1) electronic means through the Bankruptcy Court's CM/ECF system; or (2) First Class U.S. Mail if the Notice of Electronic Filing from this Court's CM/ECF system indicates that there are interested parties not deemed to have consented to electronic notice or service.

/s/ Tyler R. Yeager
TYLER R. YEAGER